GREGORY A. ROUGEAU (194437)
BRUNETTI ROUGEAU LLP
235 Montgomery Street, Suite 830
San Francisco, CA 94104
Telephone: (415) 992-8940
Facsimile: (415) 992-8915
e-mail: grougeau@diamondmccarthy.com

Attorneys for Plaintiff MICHAEL DISKINT

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>PHILIP M. LAWRENCE, II,<br><br>　　　　Debtor.<br> | Case No.: 1:23-bk-11082-VK<br><br>Chapter 7<br><br>Adv. Proc. No. |
| MICHAEL DISKINT, an individual,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>PHILIP M. LAWRENCE, II, an individual,<br><br>　　　　Defendant. | **COMPLAINT FOR NONDISCHARGEABILITY OF DEBT**<br><br>**(11 U.S.C. § 523(a)(2)(A))** |

Plaintiff MICHAEL DISKINT, an individual (the "Plaintiff"), hereby complains and alleges against defendant PHILIP M. LAWRENCE, II, the debtor in the above-captioned case (the "Defendant") as follows:

## VENUE AND JURISDICTION

1. In accordance with LBR 7008-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Central District of California, this Court has jurisdiction over this Adversary Proceeding under 28 U.S.C. §§ 151, 157(b)(2)(A) and (O) and 1334, as this Adversary

-1-    COMPLAINT FOR NONDISCHARGEABILITY OF DEBT

Proceeding related to *In re Philip M. Lawrence, II*, Chapter 7 Case No. 1:23-bk-11082-VK, pending in the United States Bankruptcy Court for the Central District of California (San Fernando Valley Division), and is a core proceeding. As required by Rule 12(b) of the Federal Rules of Bankruptcy Procedure, Plaintiff consents to entry of final judgment herein by the Bankruptcy Court.

2. Venue is proper under 28 U.S.C. § 1409.

## THE PARTIES

3. Plaintiff MICHAEL DISKINT is an individual residing in Altadena, California.

4. Defendant PHILIP M. LAWRENCE, II is an individual who is the debtor herein.

## GENERAL ALLEGATIONS

**A.    BACKGROUND.**

5. Plaintiff, a songwriter, project manager, and producer, and Defendant have known one another for over 15 years, and have collaborated at various times over those years in songwriting and production. Defendant is a successful songwriter, producer, and performer and collaborates with the famous singer and record producer, Bruno Mars. Defendant has won eight Grammy Awards for his work.

6. In 2017, following Defendant's extensive period of touring with Bruno Mars, and during a time in which Defendant was experiencing myriad personal problems, Plaintiff and Defendant joint ventured for production purposes, in which Plaintiff and Defendant agreed not only to write songs together, but to consult and confer regarding management, generally, of the Record Plant, a legendary recording studio purchased by Defendant the year prior, and Defendant's other production ventures, PML Productions, LLC ("PML"), a production company, Ziast Media Group ("Ziast"), a multimedia venture combining music, film and theater production, and CMNTY Culture RCDS, a record label, and Defendant's additional, personal projects as well. Plaintiff was President and Chief Content Officer of the joint venture.

7. In consideration for Plaintiff's agreement to joint Defendant in the aforementioned joint venture, Defendant promised Plaintiff a 10% interest in the Record Plant, 1% of the proceeds from the Defendant's future sale of his music catalogue, and 25% of CMNTY Culture

asset. Defendant further promised that upon the sale of Defendant's music catalogue, Plaintiff and Defendant's venture would be incorporated, and that Plaintiff would receive both an equity interest in and salary from the incorporated entity.

8. In reliance on the aforementioned promises, Plaintiff worked for Defendant for approximately two years, without any payment whatsoever. Among numerous other things, during those two years, Plaintiff and Defendant wrote several songs together, including a number of songs in a Netflix film called "Jingle Jangle." Plaintiff also located and retained a Chief Executive Officer for the Record Plant, whose operations were threatened by management issues. Further, in the midst of a protracted period of personal issues for Defendant during which he was unavailable to oversee management of his entities and projects, Plaintiff interfaced with various companies, artists, and producers with whom Defendant collaborated, all to further Defendant's interests.

9. In or around the summer of 2019, Defendant informed Plaintiff that they could no longer work together. No legitimate reason was given for this termination, and Plaintiff was paid nothing on account of the substantial services he rendered to Plaintiff in furtherance of the parties' venture.

10. On or about February 7, 2020, Defendant sold a portion of his music catalogue for approximately $90 million.

**B.    DEFENDANT'S PROMISE TO PAY SETTLEMENT AMOUNT TO PLAINTIFF.**

11. Following Plaintiff's termination from the parties' venture and their division of certain works, Plaintiff and Defendant exchanged numerous emails wherein they discussed and negotiated terms of settlement of Plaintiff's remaining potential claims against Defendant.

12. The parties' settlement discussions culminated in Defendant's promise to pay Plaintiff the principal sum of $550,000 (the "Settlement Payment"), with an initial payment of $25,000 made by December 1, 2021, in return for a release of Plaintiff's claims. Defendant's agreement to make the Settlement Payment is evidenced by an October 15, 2021 email exchange between the parties, summarized as follows:

    Plaintiff:    We have agreed to a settlement of $550,000 for all open issues between us.

1            The first payment will be $25,000 to be paid December 1st, with a payment schedule for the rest to be decided in a timely fashion.

2    Defendant:     We are indeed in agreement.

3 A true and correct copy of the parties' email agreement is attached hereto as Exhibit "A" and is incorporated herein by such reference.

## C. COMMENCMENT OF CHAPTER 11 CASE, AND CONVERSION TO CHAPTER 7.

     13.     On August 3, 2023, Defendant commenced this bankruptcy case as a case under Chapter 11 of the United States Bankruptcy Code (Docket No. 1). The case was converted to Chapter 7 on September 12, 2023 (Docket No. 72).

     14.     Plaintiff's claim against Defendant has not been scheduled. On September 25, 2023, Plaintiff filed a Proof of Claim, designated Claim No. 12, for recovery of the agreed-upon principal amount of $550,000 owed by Defendant to Plaintiff, plus prepetition accrued interest.

### FIRST CLAIM FOR RELIEF
**(Nondischargeability of Debt- Fraud- 11 U.S.C. § 523(a)(2)(A))**

     15.     Plaintiffs reincorporate and reallege by reference Paragraphs 1 through 14, inclusive, of this Complaint, as if fully set forth herein.

     16.     On October 15, 2021, as an inducement for Plaintiff to settle all claims against Defendant, Defendant promised and agreed to pay Plaintiff the principal sum of $550,000, with an initial payment of $25,000 made on or before December 1, 2021.

     17.     Plaintiff did not intend to fulfill his promise to pay $550,000 to Defendant when he made the promise. Though he did make the initial agreed-upon $25,000 payment to Plaintiff on December 15, 2021, and through continuous communications with Plaintiff through the date of the commencement of this case, Defendant subsequently asserted a myriad of various false excuses as to why no further settlement payments had been made, and thereafter failed and refused to sign a more formal form of written settlement agreement forwarded to his counsel by prepetition counsel for Plaintiff, all the while living a lifestyle that was lavish to the extreme.

     18.     Defendant intended that Plaintiff rely on Defendant's promise to pay the principal sum of $550,000 in settlement of Plaintiff's claims, when Defendant made the promise.

19. Plaintiff reasonably relied upon Defendant's promise to pay the Settlement Payment.

20. Other than the initial $25,000 payment in 2021, Defendant has never made any payment of the promised Settlement Payment to Plaintiff, and did not schedule Plaintiff as a creditor in this case.

21. Plaintiff has suffered damages as a proximate cause of Defendant's promissory fraud as herein alleged, in that Plaintiff agreed to settle his prepetition claims against Defendant for the principal amount of $550,000. Plaintiff's reliance on Defendant's promise to make the Settlement Payment is a substantial factor in causing Plaintiff's harm.

22. Taking into account the initial $25,000 payment made by Defendant, with prepetition accrued interest from the date of that payment (December 15, 2021), Plaintiff's claim against Defendant is $614,654.60. Plaintiff seeks entry of Judgment herein, together with a determination that such debt is excepted from discharge under 11 U.S.C. § 523(a)(2)(A), as the debt embodied in Plaintiff's claim, in the amount of $614,654.60, was obtained by "false pretenses, a false representation, or actual fraud."

## **PRAYER**

1. For a determination that the debt owed to Plaintiff by Defendant, in the amount of $614,654.60, is excepted from discharge under 11 U.S.C. § 523(a)(2)(A), in that the damages arise from Defendant's "false pretenses, a false representation, or actual fraud;"

2. For judgment in favor of Plaintiff, and against Defendant, in the amount of $614,654.60; and

3. For costs of suit incurred herein; and

4. For such other and further relief as the Court may deem just and proper.

Dated: December 12, 2023                                 BRUNETTI ROUGEAU LLP

By:    */s/ Gregory A. Rougeau*
　　　　GREGORY A. ROUGEAU
　　　　Attorneys for Plaintiff
　　　　MICHAEL DISKINT

-5-                                          COMPLAINT FOR NONDISCHARGEABILITY OF DEBT

**EXHIBIT A**

 Michael Diskint <mdiskint37@gmail.com>

## Re: Settlement
1 message

**Philip Lawrence** <smeezemp3@gmail.com>  Fri, Oct 15, 2021 at 9:23 PM
To: Michael Diskint <Mdiskint37@gmail.com>

We are indeed in agreement.

Philip Lawrence
Chairman & CEO
CMNTY Culture

On Oct 15, 2021, at 6:22 PM, Michael Diskint <Mdiskint37@gmail.com> wrote:

Dear Phil,

We have agreed to a settlement of $550,000 for all open issues between us. The first payment will be $25,000 to be paid December 1st, with a payment schedule for the rest to be decided in a timely fashion.

Please confirm that you promised the deal is done, that I do not need to file a lawsuit to enforce my rights, and that you will put my counsel in touch promptly with someone (you or anyone else) who can finalize these documents.

Sincerely -